IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

IN RE:                              §
                                    §
KEVCO, INC., ET AL.,                §
                                    §
         Debtors.                   §
_____      §
                                    §
COASTAL INDUSTRIES, INC.,           §
                                    §
         Appellant,                 §
                                    §
VS.                                 §   NO. 4:05-CV-691-A
                                    §
DENNIS FAULKNER,                    §
PLAN ADMINISTRATION AGENT,          §
ACTING ON BEHALF OF KEVCO,          §
INC. UNDER ITS CONFIRMED PLAN,      §
                                    §
         Appellee.                  §

MEMORANDUM OPINION
and
ORDER

This action comes before the court as an appeal from a July
15, 2005, judgment of the United States Bankruptcy Court for the
Northern District of Texas, Fort Worth Division, the Honorable
Barbara J. Houser presiding.  The court, having considered the
briefs of appellant, Coastal Industries, Inc. ("Coastal"), and
appellee, Dennis Faulkner, as the Plan Administration Agent for
the debtors, Kevco, Inc., and its direct and indirect wholly
owned subsidiaries, ("the Agent"), the record on appeal, and
applicable authorities, finds that the bankruptcy court's
judgment should be affirmed.

I.

Jurisdiction

The appeal is from a judgment signed July 15, 2005, awarding the Agent recovery against Coastal in the amount of $813,627.71 plus pre-judgment interest.  This court's jurisdiction exists pursuant to 28 U.S.C. § 158(a).

II.

Underlying Proceedings

On February 5, 2001, Kevco, Inc. and its direct and indirect wholly owned subsidiaries and affiliates (collectively, "the debtors" or "Kevco") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.  On June 25, 2004, under the debtors' confirmed plan of liquidation, the Agent initiated an adversary proceeding against Coastal seeking to recover $1,926,172.90 in allegedly preferential payments made by Kevco to Coastal.  After a four-day trial, the bankruptcy court held that all the payments were preferential transfers and further that Coastal had failed to carry its burden of proof under 11 U.S.C. § 547(c)(2)[1] and (g) that any of them were shielded by the ordinary course of business ("OCOB") defense. The bankruptcy court, however, did find that Coastal was entitled to a subsequent new value defense in the amount of $1,112,545.19. See 11 U.S.C. § 547(c)(4).  Judgment was awarded to the Agent for

---

[1]On October 17, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective, including a substantial broadening of the ordinary course of business defense.  See In re SGSM Acquisition Co., LLC, 439 F.3d 233, 237 n.1. (citing 11 § 547(c)(2)).  The law applicable here, however, is the pre-amendment ordinary course of business defense.

2

the remaining balance of $813,627.71 plus pre-judgment interest. This appeal ensued.

## III.

### Underlying Facts

In the memorandum opinion of June 30, 2005, the bankruptcy court thoroughly recited the relevant facts to this dispute. They will not be repeated here.  Briefly, in the underlying bankruptcy proceedings, Coastal stipulated that all the payments at issue were preferences under 11 U.S.C. § 547(b) of the Bankruptcy Code.  Therefore, as set forth more specifically below, the only issues before the bankruptcy court, and now this court, are the viability of Coastal's defenses of OCOB, judicial estoppel, and res judicata, notably on all of which Coastal bears the burden of proof.

## IV.

### Issues on Appeal

There are four issues[2] on appeal:

A.    Whether the bankruptcy court erred at trial by finding in favor of the Agent with regard to Coastal's OCOB defense under 11 U.S.C. § 547(c)(2)(B), including,

> 1.    Whether the bankruptcy court erred in giving the testimony of Stephen Thomas, the Agent's expert,

---

[2]The structure of appellant's brief is very confusing.  Among other things, the summary of the statement of issues on page 2 does not always correspond with the substantive briefing later in the brief.  For example, Coastal has a discussion on whether the bankruptcy court erred in its analysis of Coastal accounts receivable from Kevco.  See Br. of Appellant  at 21-23. Yet this issue is not listed in the preliminary Statement of Issues.  Id. at 2.  Because of this confusion, the court is defining the issues as it understands them, which understanding, in turn, largely corresponds with how the Agent framed the issues.

more weight than that of Coastal's fact witness
David Cook.

    2.    Whether the bankruptcy court erred in creating the
"Wingate Historical Period" for comparing payments
made in the OCOB or financial affairs between
Kevco and Coastal in the pre-preference period
with the preference period under 11 U.S.C. §
547(c)(2)(B).

    3.    Whether the bankruptcy court erred in finding that
Coastal engaged in "unusual collection practices"
during the preference period.

B.    Whether the bankruptcy court erred by finding in favor

of the Agent with regard to Coastal's OCOB defense under 11

U.S.C. § 547(c)(2)(C), including,

    1.    Whether the bankruptcy court erred in holding that
the manufactured housing industry was the
applicable industry standard for the purposes of
determining "ordinary business terms" under 11
U.S.C. § 547(c)(2)(C).

    2.    Whether the bankruptcy court erred in giving zero
weight to the testimony of James Cunningham with
respect to whether the payments in question were
made pursuant to the "ordinary business terms" in
accordance with 11 U.S.C. § 547(c)(2)(C).

C.    Whether the bankruptcy court erred in finding against

Coastal on its defense of judicial estoppel.

D.    Whether the bankruptcy court erred by not granting

summary judgment for Coastal on its res judicata defense and in

granting summary judgment for the Agent on Coastal's res judicata

defense.

V.

Standard of Review

To the extent the appeal presents questions of law, the bankruptcy court's judgment is subject to <u>de novo</u> review. <u>Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.)</u>, 785 F.2d 1249, 1252 (5th Cir. 1986).  Findings of fact, however, will not be set aside unless clearly erroneous. Bankr. R. 8013; <u>Memphis-Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)</u>, 783 F.2d 1283, 1287 (5th Cir. 1986).  A finding is clearly erroneous, although there is evidence to support it, when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.  <u>Id.</u>  The mere fact that this court would have weighed the evidence differently if sitting as the trier of fact is not sufficient to set aside the bankruptcy court's order if that court's account of the evidence is plausible in light of the record viewed in its entirety. <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 573-74 (1985).

VI.

Analysis

A.   <u>Coastal's OCOB Defense under 11 U.S.C. § 547(c)(2)(B)</u>

There is no precise legal test for whether payments are made in the OCOB.  <u>Gasmark Ltd. Liquidating Trust v. Louis Dreyfus Gas Corp.</u>, 158 F.3d 312, 317 (5th Cir. 1998) (citation omitted). Rather, the analysis focuses on the time within which the debtor ordinarily paid the creditor and whether the timing of the

payments during the 90-day period reflected some consistency with that practice.  Id.  It follows that the OCOB inquiry is peculiarly factual and that the bankruptcy court's findings in this regard are consequently entitled to deference unless clearly erroneous.  In re Braniff Airways, Inc., 783 F.2d at 1287.  The justification for this great deference to the factual findings of the bankruptcy court is perhaps well illustrated here where the bankruptcy court's forty-one page memorandum opinion reflects extremely careful attention to and consideration of the facts.

    1.   The Testimony of Stephen Thomas v. David Cook

    With regard to its OCOB defense under 11 U.S.C. § 547(c)(2)(B), Coastal complains that the bankruptcy court wrongly gave the testimony of the Agent's expert, Stephen Thomas, more weight than the testimony of Coastal's fact witness, David Cook. The bankruptcy judge's opportunity to make first-hand credibility determinations entitles its assessment of the evidence to deference, which like other factual findings, will not be set aside unless clearly erroneous.  In re Perry, 345 F.3d 303, 309 (5th Cir. 2003).  Where the finding of a bankruptcy judge is based on its decision to credit the testimony of one witness over that of another, that finding, if not internally inconsistent, can virtually never be clear error.  Theriot v. U.S., 245 F.3d 388, 395 (5th Cir. 1998).  Such is the case here.  The court finds no error by the bankruptcy court in its assessment as to the respective credibility of these two witnesses.

2.   <u>The Wingate Historical Period</u>

Coastal contends that the bankruptcy court erred by not considering the entire business relationship between Coastal and Kevco, which dated back to 1982, in making the determination as to what the OCOB was between them.  Instead, the bankruptcy court found that the fifteen-month period between when Wingate Partners ("Wingate") took control of Kevco in August 1999 until November 2001, was the appropriate pre-preference period with which to compare Coastal's business and financial affairs with Kevco in the preference period.  <u>See</u> Coastal's App. in Support of Appeal at 87 (Mem. Opinion at 21).

As an initial matter, the court concurs with the bankruptcy court that there is legal authority for considering less than the entire relationship of the parties.  <u>See</u> Coastal's App. in Support of Appeal at 87 (Mem. Opinion at 21); <u>see also</u> <u>Lovett v. St. Johnsbury Trucking</u>, 931 F.2d 494, 498 (8th Cir. 1991) (twelve month period is an appropriate standard for determining the ordinary course of business between the parties).  Given how the relationship between Coastal and Kevco changed after Wingate's takeover, the court further concludes that the bankruptcy court appropriately did just that here.

Specifically, the bankruptcy court found that, after Wingate took over Kevco, its cash-management system became more sophisticated.  <u>See</u> Coastal's App. in Support of Appeal at 86 (Mem. Opinion at 20).  Kevco's payments to vendors, including Coastal, also became more regular.  <u>Id.</u>  Moreover, the pattern of

7

payments from Kevco to Coastal was different after Wingate's
investment and assumption of management control.  Id.  Payments
to vendors were unquestionably more regular and occurred almost
invariably on the 10th and 25th of the month.  Id.   None of
these factual findings is clearly erroneous.  Nor was the
bankruptcy court's finding that it would be unfair to the other
creditors to permit Coastal to cherry-pick some isolated payment
over the parties' twenty-year relationship to show that there was
some consistency with a payment within the preference period.
Id. at 88 (Mem. Opinion at 22).

    3.  The Finding of Unusual Collection Practices

    Before concluding that Coastal had failed to establish, by a
preponderance of the evidence, the absence of unusual collection
activity, the bankruptcy court engaged in a thorough analysis of
all the facts in evidence.  See Coastal's App. in Support of
Appeal at 89-101 (Mem. Opinion at 23-35).  This court need not
recite each of the bankruptcy court's findings here.  Suffice it
to say that the court has thoroughly reviewed them and concluded
that none of them is clearly erroneous.

B.  Coastal's OCOB Defense Under 11 U.S.C. § 547(c)(2)(C)

    The third prong of the OCOB defense required Coastal to
prove by a preponderance of the evidence that Kevco made the
transfers at issue according to "ordinary business terms."  See
11 U.S.C. § 547(c)(2)(c).  A payment, in turn, is made according
to its ordinary business terms if the payment practices at issue
comport with the standard in the industry.  In re Gulf City

Seafoods, Inc., 296 F.3d 363, 367-68 (5th Cir. 2002).  Here,
Coastal complains that the bankruptcy court defined the
applicable industry too narrowly and also failed to duly credit
the testimony of James Cunningham.

     1.   The Chosen Industry

    At trial, through the testimony of James Cunningham, Coastal
attempted to define the relevant industry as the manufacturing
industry generally.  Finding that far too broad, the bankruptcy
court instead defined the relevant industry as the manufacturing
housing industry, notably the industry in which Coastal and Kevco
operated.  According to the bankruptcy court, Cunningham's
knowledge regarding the competitors or collection practices of
either Coastal or Kevco was virtually nil.  He could not even
identify Coastal's or Kevco's competitors.  See Coastal's App. in
Support of Appeal at 103-105 (Mem. Opinion at 37-39).  For an
industry standard to be a meaningful benchmark, there should be
evidence of credit arrangements of other debtors and creditors in
the same industry.  Gulf City Sea Foods, Inc., 296 F.3d at 369.
The bankruptcy court did not err in concluding that such evidence
was lacking.

     2.  Testimony of James Cunningham

    Coastal complains that the bankruptcy court wrongfully
discounted James Cunningham's testimony.  Again, the bankruptcy
judge's first-hand credibility determinations are entitled to
deference.  In re Perry, 345 F.3d at 309.  Given Mr. Cunningham's
apparent lack of experience and knowledge in the relevant

industry, the weight or lack thereof afforded to his testimony by the bankruptcy court was not clearly erroneous.

C.    Judicial Estoppel

Consisting of barely two short paragraphs without any citation to legal authority, Coastal's urging of its affirmative defense of judicial estoppel is half-hearted at best.  From what the court can gather, however, Coastal appears to assert that the Agent took an inconsistent position insofar as Coastal believed that it was doing business with "Kevco, Inc."  Kevco, Inc., in turn, did not disclose any payments to Coastal within 90 days of the petition date on its schedules or statement of financial affairs.  Another Kevco entity -- Kevco Distribution, L.P. -- did.  Therefore, per Coastal, the Agent's preference claim is barred by judicial estoppel.

Judicial Estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation.  In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999).  Three requirements must be met for it to apply here: (1) the Agent's position is clearly inconsistent with a previous one; (2) the bankruptcy court accepted the previous position; and (3) the non-disclosure was not inadvertent.  In re Superior Crewboats, Inc., 374 F.3d 330, 335 (5th Cir. 2004).

The bankruptcy court correctly stated this applicable law. It also correctly applied it to the facts in concluding that judicial estoppel did not apply.  Indeed, based on the uncontroverted evidence, the court is perplexed as to how Coastal

10

even begins to contend that it might.  To begin with, there is no evidence that the Agent took an inconsistent position, the very first requirement.  Coastal was doing business with Kevco Distribution, L.P., and the statement of financial affairs of that entity completely and accurately disclosed that, in the ninety days preceding the petition date, it had paid Coastal $1,926,172.90.  See Coastal's App. in Support of Appeal at 82 (Mem. Opinion at 16).  Coastal's perception as to which Kevco entity it was selling product is irrelevant.  Moreover, that Coastal thought it was doing business with Kevco, Inc., rings hollow given that Coastal admits that it did not even review the schedules or statement of financial affairs of that the entity. Id. at 80 n.14.  The bankruptcy court did not err in finding judicial estoppel inapplicable.

D.   Res Judicata

     Apparently Coastal cares even less about its affirmative defense of res judicata as Coastal fails to even articulate what its res-judicata argument is.  Rather, in its primary brief, it merely states that various undiscussed facts in the record in this case are similar in an unidentified way to a bankruptcy opinion out of Michigan.  See Br. of Appellant at 49.  Similarly, in its reply brief, Coastal states that it "stands on its arguments previously made on this issue to the Bankruptcy Court in its pre-trial briefs, including its summary judgment briefs and to this Court in its initial brief."  See Reply of Appellant at 25.  In essence, Coastal invites the court to sift through the

11

voluminous record in search of facts supporting its res judicata defense and then to perform independent research as to whether those facts support a finding in favor of this defense.  The court declines to do so and finds that Coastal has abandoned this argument on appeal.  <u>See</u>, <u>e.g.</u>, <u>Fehlhaber v. Fehlhaber</u>, 681 F.2d 1015, 1030 (5th Cir. 1982) (failure to brief and argue an issue is grounds for finding that the issue has been abandoned). Further, even had Coastal not abandoned this argument on appeal, it is without any merit, and the bankruptcy court therefore did not err by rejecting it.

VII.

<u>Order</u>

For the reasons discussed herein,

The court ORDERS that the July 15, 2005, judgment from which appeal is taken be, and is hereby, affirmed.

SIGNED July 18, 2006.

                                 /s/ John McBryde
                                JOHN McBRYDE
                                United States District Judge

12